**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

SOUTHERN UTAH WILDERNESS
ALLIANCE; NATURAL RESOURCES
DEFENSE COUNCIL; WILDERNESS
SOCIETY; NATIONAL PARKS
CONSERVATION ASSOCIATION;
GRAND CANYON TRUST; SIERRA
CLUB; NATIONAL TRUST FOR
HISTORIC PRESERVATION; ROCKY
MOUNTAIN WILD; UTAH RIVERS
COUNCIL; GREAT OLD BROADS FOR
WILDERNESS,

     Plaintiffs - Appellees,

v.

MARCILYNN BURKE, in her official
capacity as Assistant Secretary for Lands
and Minerals Management of the United
States Department of the Interior; UNITED
STATES BUREAU OF LAND
MANGAGEMENT; UNITED STATES
DEPARTMENT OF INTERIOR,

     Defendants - Appellees,

SAN JUAN COUNTY; KANE COUNTY,

     Intervenors Defendants - Appellants,

 and

STATE OF UTAH; CARBON COUNTY;
TWILIGHT RESOURCES; PAR 5
EXPLORATION, LLC; UTAH SCHOOL
AND INSTITUTIONAL TRUST LANDS

No. 17-4113

ADMINISTRATION; UINTAH COUNTY, Utah; DUCHESNE COUNTY, Utah; DAGGETT COUNTY, Utah; TRAILS PRESERVATION ALLIANCE, INC.; EMERY COUNTY; GRAND COUNTY; XTO ENERGY,

        Intervenors Defendants.

_____

SOUTHERN UTAH WILDERNESS ALLIANCE; NATURAL RESOURCES DEFENSE COUNCIL; WILDERNESS SOCIETY; NATIONAL PARKS CONSERVATION ASSOCIATION; GRAND CANYON TRUST; SIERRA CLUB; NATIONAL TRUST FOR HISTORIC PRESERVATION; ROCKY MOUNTAIN WILD; UTAH RIVERS COUNCIL; GREAT OLD BROADS FOR WILDERNESS,

        Plaintiffs - Appellees,

v.

MARCILYNN BURKE, in her official capacity as Assistant Secretary for Lands and Minerals Management of the United States Department of the Interior; UNITED STATES BUREAU OF LAND MANAGEMENT; UNITED STATES DEPARTMENT OF INTERIOR,

        Defendants - Appellees,

SAN JUAN COUNTY; EOG RESOURCES, INC.; KANE COUNTY; TWILIGHT RESOURCES; PAR 5 EXPLORATION, LLC; UTAH SCHOOL AND INSTITUTIONAL TRUST LANDS ADMINISTRATION; XTO ENERGY;

No. 17-4115

2

BADLANDS ENERGY; CRESCENT POINT ENERGY US CORP.,

      Intervenors Defendants,

STATE OF UTAH; CARBON COUNTY; UINTAH COUNTY, Utah; DUCHESNE COUNTY, Utah; DAGGETT COUNTY, Utah; EMERY COUNTY; GRAND COUNTY,

      Intervenors Defendants - Appellants,

and

TRAILS PRESERVATION ALLIANCE, INC.; BLUE RIBBON COALITION, INC.; COLORADO OFF-HIGHWAY VEHICLE COALITION,

      Intervenors Defendants - Appellees.

_____

**Appeals from the United States District Court
for the District of Utah
(D.C. No. 2:12-CV-00257-DAK)**

_____

David Halverson (Sean D. Reyes, Utah Attorney General, Anthony L. Rampton and Kathy A.F. Davis, on the briefs), Office of the Attorney General for the State of Utah, Salt Lake City, Utah, appearing for Appellants State of Utah and Carbon, Daggett, Duchesne, Emery, Grand, and Uintah Counties.

Shawn T. Welch (Ashley A. Peck, with him on the briefs), Holland & Hart LLP, Salt Lake City, Utah, appearing for Appellants San Juan and Kane Counties.

Thekla Hansen-Young, Attorney, Environment & Natural Resources Division, United States Department of Justice, Washington, DC (Jeffrey H. Wood, Acting Assistant Attorney General and Eric Grant, Deputy Assistant Attorney General, United States Department of Justice, Washington, DC; Andrew C. Mergen, Robert J. Lundman, and Luther L. Hajek, Attorneys, Environment & Natural Resources Division, United States Department of Justice, Washington, DC; and Veronica Larvie, Office of the Solicitor,

United States Department of the Interior, Washington, DC, with her on the brief), appearing for Appellees United States Bureau of Land Management.

Robin Cooley, Earthjustice, Denver, Colorado (Stephen Bloch, Southern Utah Wilderness Alliance, Salt Lake City, Utah, with her on the brief), appearing for Appellees Southern Utah Wilderness Alliance, Natural Resources Defense Council, Wilderness Society, National Parks Conservation Association, Grand Canyon Trust, Sierra Club, National Trust for Historic Preservation, Rocky Mountain Wild, Utah Rivers Council, and Great Old Broads for Wilderness.

_____

Before **BRISCOE**, **BALDOCK**, and **EID**, Circuit Judges.

_____

**BRISCOE**, Circuit Judge.

_____

These appeals were filed following district court approval of a settlement agreement. The Settlement Agreement sought to end a longstanding, complex dispute dating from 2008. In 2008, environmental groups led by the Southern Utah Wilderness Alliance (collectively, "SUWA") challenged six resource management plans ("RMPs") and associated travel management plans ("TMPs") adopted by the United States Bureau of Land Management ("BLM"). *See* App. 00032-76. Six other parties intervened as respondents in the district court, including the State of Utah and several counties in Utah (collectively, "Utah"). When BLM, SUWA, and multiple intervenors entered into a settlement and sought to dismiss the case in January 2017, Utah challenged the settlement. Utah contends, among other arguments, that the Settlement Agreement illegally codified interpretative BLM guidance into substantive rules, impermissibly binds the BLM to a past Administration's policies, infringes valid federal land rights (known as "R.S. 2477 rights"), and violates a prior

4

BLM settlement. The district court disagreed, and approved the Settlement Agreement. App. 01477-78.

Utah advances the same arguments on appeal and asks this court to reverse the district court because the Settlement Agreement is unlawful and against the public interest. SUWA asserts that this court lacks subject matter jurisdiction over Utah's claims. We agree with SUWA, and dismiss for lack of subject matter jurisdiction.

I

Central to this dispute is whether the BLM can simultaneously comply with all of the following: the Settlement Agreement; the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701-1787; a prior BLM settlement (the "Wilderness Settlement"); currently pending litigation (the "Wildlands Litigation"); and the Administrative Procedure Act ("APA"). Utah contends that BLM cannot, and therefore the Settlement Agreement is unlawful and against public policy.

We look first to the Settlement Agreement. *See* App. 01095-129. Section A lays out the general provisions of the Settlement Agreement. Within Section A, Paragraph 12 states that "[a]ny subsequent modifications, supplements, or amendments to this Settlement Agreement must be in writing, and must be signed and executed by or on behalf of the affected parties, or their successors in interest, as necessary." *Id.* at 01100. Section B details more specific requirements on the action that the BLM will take under the Settlement Agreement. Paragraph 13 provides for deadlines by which BLM will issue five new TMPs for five specific travel

5

management areas. *Id.* at 01100-01. Paragraph 15 details the process by which BLM

will prepare the TMPs. In its entirety, Paragraph 15 reads as follows:

> **Applicable law and agency guidance.** BLM will prepare the new TMPs for each of the TMAs identified in paragraph 13 pursuant to applicable statutes, regulations, BLM-Utah Instruction Memorandum No. 2012-066 ("BLM-Utah IM 2012-066"), and the terms identified in paragraphs 16-24 of the Settlement Agreement. In addition to BLM-Utah IM 2012-066, relevant existing guidance includes, but is not limited to: BLM-Utah Guidance for the Lands with Wilderness Characteristics Resource, Instruction Memorandum No. UT 2016-027 (September 30, 2016); BLM National Environmental Policy Act Handbook H-1790-1 (January 2008); BLM-Utah Handbook 8110, *Guidelines for Identifying Cultural Resources* (2002); BLM Handbook H-8342, Travel and Transportation (March 16, 2012); BLM Manual 1613, *Areas of Critical Environmental Concern* (September 29, 1988); BLM Manual 1626, *Travel and Transportation* (July 14, 2011); BLM Manual 6320, *Considering Lands with Wilderness Characteristics in BLM Land Use Planning* (March 15, 2012); BLM Manual 6330, *Management of BLM Wilderness Study Areas* (July 13, 2012), 6340, *Management of BLM Wilderness* (July 13, 2012); and BLM Manual 8110, *Identifying and Evaluating Cultural Resources on Public Lands* (December 3, 2004). Nothing in the Settlement Agreement makes binding the aforementioned guidance. Nothing in this Settlement Agreement shall be construed as limiting BLM's discretion to promulgate new manuals, handbooks, or instruction memoranda consistent with relevant law and regulations. The parties may agree to modify the Settlement Agreement to reflect updated regulations or guidance, consistent with paragraph 12.

App. 01101-1102. Utah contends that Paragraph 15 elevates certain agency guidance

to the level of substantive rules in violation of the APA, and also provides SUWA

with veto power over future BLM guidance and substantive rulemaking that could

apply to the five specific travel management areas listed in Paragraph 13.

Utah also contends that the BLM cannot comply with both the Settlement

Agreement in this case and a prior settlement agreement reached in a previous

6

litigation, the aforementioned Wilderness Settlement. The Wilderness Settlement resulted from different land-use litigation between several of the same parties to this litigation that concerned wilderness study areas ("WSAs") in Utah. *See Utah v. Norton*, 2:96-CV-0870, 2006 WL 2711798 (D. Utah Sept. 20, 2006), *aff'd sub nom. Utah v. U.S. Dep't of Interior*, 535 F.3d 1184 (10th Cir. 2008). In the Wilderness Settlement, the BLM conceded that its authority to establish new wilderness study areas expired no later than October 21, 1993. App. 01426. The BLM further stipulated in the Wilderness Settlement that it would not utilize its general land use planning authority under FLPMA § 202 to establish, manage, or otherwise treat non-WSA public lands as wilderness or as WSAs. *Id.* at 01427.

Utah asserts that the Settlement Agreement permits the BLM to use its land use planning authority to circumvent the Wilderness Settlement.[1] Utah points to Paragraph 17 to support its theory. For example, Paragraph 17.e states:

> **Travel network minimization alternatives.** BLM will explain in the NEPA document for each TMP how each proposed alternative route network will "minimize damage" to "resources of the public lands," 43 C.F.R. § 8342.1(a), including identified cultural resources and public lands with BLM-inventoried wilderness characteristics. For purposes of minimizing damage to public lands with BLM-inventoried wilderness characteristics, BLM will consider the potential damage to any constituent element of wilderness characteristics, including naturalness, outstanding opportunities for solitude, and outstanding opportunities for primitive and unconfined recreation, for each alternative route network. BLM will consider in the NEPA document at least one proposed alternative route network that would not designate for ORV use any

---

[1] In separate on-going litigation known as the Wildlands Litigation, Utah is currently advancing several claims that the BLM is impermissibly managing non-WSA lands as wilderness in defiance of the Wilderness Settlement. *See State of Utah v. Zinke*, 2:10-cv-0970-DB-BCW (D. Utah).

route where BLM has determined that such use may "damage," 43 C.F.R. § 8342.1(a), BLM-inventoried wilderness characteristics; however, BLM need not consider closing such a route to ORV use to the extent the use is authorized by an existing right-of-way or other BLM authorization or by law, including *State of Utah v. Andrus*, 486 F. Supp. 995 (D. Utah 1979), which will be documented in the final route report.

App. 01106. Utah also contends that Paragraph 17.e disregards its R.S. 2477 rights, as does Paragraph 17.f. Paragraph 17.f, in full, states:

> **Alternative route networks within WSAs and Natural Areas.** For routes or portions thereof that are located on public land within wilderness study areas ("WSAs") and Natural Areas, BLM will analyze in the NEPA document at least one alternative route network that would enhance BLM-inventoried wilderness characteristics by designating the routes or the relevant portions thereof as closed to ORV use, unless ORV use of the route is authorized by an existing right-of-way or other BLM authorization or by law. To the extent ORV use of a route is authorized, this alternative route network will include measures limiting ORV use to enhance BLM-inventoried wilderness characteristics to the greatest extent possible consistent with applicable laws, regulations, or existing right-of-way authorizations.

App. 01106.

## II

We begin our analysis by addressing whether we have jurisdiction over this dispute. SUWA and BLM assert this court lacks subject matter jurisdiction because Utah has not established Article III standing and its claims are not ripe for judicial review. We need only focus on ripeness to resolve the jurisdictional question. *See Utah*, 535 F.3d at 1191.

"[T]he ripeness doctrine has two underlying rationales: preventing courts from becoming entwined in 'abstract disagreements over administrative policies,' and 'protect[ing] the agencies from judicial interference until an administrative decision

8

has been formalized and its effects felt in a concrete way by the challenging parties.'"

*Id.* at 1191-92 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)).

Under this analysis, we consider three factors:

> 1) whether delayed review would cause hardship to the plaintiffs; 2) whether judicial intervention would inappropriately interfere with further administrative action; and 3) whether the courts would benefit from further factual development of the issues presented.

*Sierra Club v. U.S. Dep't of Energy*, 287 F.3d 1256, 1262-63 (10th Cir. 2002) (citing

*Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998)). A common

thread running through all three factors points to our concluding that Utah's appeal is

unripe: at this point, no one knows how BLM will implement the Settlement

Agreement.

Many of Utah's concerns are anticipatory, or are not within the purview of the

Settlement Agreement. For example, there are no final travel management plans.

Additionally, BLM has not rescinded any of the guidance referenced in the

Settlement Agreement, and therefore SUWA has not had the opportunity to exercise

its alleged veto power provided by the Settlement Agreement. Further, the Settlement

Agreement has no effect on R.S. 2477 rights,[2] App. 1107, and nothing in the

Settlement Agreement requires BLM to protect wilderness characteristics when

developing a TMP. Instead, the Settlement Agreement lays out criteria for BLM to

consider as it develops TMPs in a complex regulatory scheme. BLM may ultimately

---

[2] Utah's complaints regarding R.S. 2477 rights appear to stem largely from the unique nature of these rights rather than from the Settlement Agreement itself. *See S. Utah Wilderness All. v. Bureau of Land Mgmt.*, 425 F.3d 735, 740-42 (10th Cir. 2005) (explaining the interplay between R.S. 2477 and FLPMA).

9

develop a TMP that creates de facto wilderness, or may impermissibly consider guidance that has been rescinded or ignore future substantive rules. But BLM might not. The Settlement Agreement neither requires BLM to create de facto wilderness, nor mandates that BLM reject future agency action taken by the present Administration. Accordingly, this court can more confidently address the substantive legal arguments raised by Utah when BLM finalizes the TMPs subject to the Settlement Agreement and ultimately reveals the Settlement Agreement's "true effect[.]" *Utah*, 535 F.3d at 1195.

As we have stated previously when examining a challenge to a prior settlement agreement involving BLM, SUWA, and Utah:

> It is true that we could study the language of the settlement and hazard a guess as to which of the parties has the better view of the settlement's eventual impact. But the settlement is manifestly vague regarding how BLM can or should make specific land management decisions, and the ripeness doctrine exists precisely for the purpose of preventing unnecessary adjudication under such circumstances. We could therefore resolve the issues in this case more confidently with the benefit of insight into how BLM actually implements the settlement in practice.

*Id.* We agree that this approach and guidance apply equally here.

III

The appeals are DISMISSED as unripe for adjudication.

10